THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:16-cr-00051-MR-WCM-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | <u>O R D E R</u> |
| | ) | |
| LARRY BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion for a Reduction in Sentence Pursuant to the First Step Act and the Changes to the Compassionate Release Statute and 18 U.S.C. 3582(c)(1)(A)(i)" [Doc. 194]; the Defendant's letter, which the Court construes as a motion for the appointment of counsel [Doc. 195]; and the Government's Motion to Seal Exhibit to Response [Doc. 202]

**I. BACKGROUND**

In August 2016, the Defendant Larry Brown pled guilty to one count of conspiracy to distribute methamphetamine. [Doc. 78]. In March 2017, the Court sentenced him to a term of 151 months of imprisonment to be followed

by five years of supervised release. [Doc. 120]. The Defendant is currently housed at USP Atlanta, and his projected release date is February 1, 2030.[1]

The Defendant now seeks a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the ongoing COVID-19 pandemic. [Doc. 194]. Specifically, the Defendant argues that he has underlying health conditions that place him at a higher risk for severe illness from COVID-19, and that his particular vulnerability to the illness is an extraordinary and compelling reason for an immediate sentence reduction to time served or a release to home confinement. [Id.]. The Defendant also filed a letter, requesting the appointment of counsel to represent him in seeking compassionate release. [Doc. 195]. The Court ordered the Government to respond to the Defendant's motion for compassionate release. [Text-Only Order entered Nov. 19, 2020]. The Government filed its response on December 21, 2020. [Doc. 200]. This matter is now ripe for disposition.

---

[1] See https://www.bop.gov/inmateloc/ (last visited Jan. 8, 2021).

## II. DISCUSSION

### A. Motion for Compassionate Release

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. As is relevant here, the

3

application note to § 1B1.13 specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). Section 1B1.13, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of

4

the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at *284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, § 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

The Defendant alleges in his Motion that he submitted a request for "compassionate release" to the Warden of USP Atlanta and that 30 days had lapsed without a response. [Doc. 194 at 30]. The Defendant's Motion does not state the date on which he purportedly made this request, nor did he attach a copy of any documentation related to such request. In response to the Defendant's Motion, the Government states that BOP's records do not contain the alleged request or any notation that such a request was ever made. [See Doc. 201-1 at 1-7]. As such, the Defendant has failed to demonstrate that he exhausted the administrative remedies provided by the BOP prior to filing his Motion. Accordingly, the Defendant's Motion is subject to being denied on this basis alone.

Even if the Defendant could demonstrate the exhaustion of the remedies provided by statute, the Court would still deny his motion as he has failed to demonstrate extraordinary and compelling reasons for his release.

The Defendant attempts to establish extraordinary and compelling reasons based on his particular susceptibility to the coronavirus due to a number of unspecified medical "conditions." [Doc. 194 at 3]. In his motion, the Defendant identifies only one particular medical condition, that being high blood pressure. [Id.]. The CDC does not recognize high blood pressure as a condition that places a person at an increased risk for severe illness or death.[2] In any event, however, the BOP medical records provided by the Government do not indicate that the Defendant in fact suffers from this condition. [See Doc. 201-1]. Even if the Defendant does have high blood pressure, that is a condition that can be adequately treated at BOP through visits to BOP Health Services and with medication or lifestyle changes. The Defendant's alleged high blood pressure, therefore, does not serve as an extraordinary and compelling reason justifying his early release.

---

[2] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (stating only that adults with hypertension "*might be at an increased risk* for severe illness") (last visited Jan. 8, 2021).

The Defendant also cites the impact of the COVID-19 pandemic in general as an extraordinary and compelling reason for his release. In this regard, the Court notes that the Federal Bureau of Prisons ("BOP") has taken significant measures to protect the health of its inmates. Since 2012, the BOP has had a Pandemic Influenza Plan in place, which establishes a multi-phase framework for BOP facilities to implement in the event of a viral outbreak.[3] The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Consistent with that plan, BOP began planning for potential coronavirus transmissions in January. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control ("CDC"), including by reviewing guidance from the World Health Organization ("WHO"). On March 13, 2020, BOP began to modify its operations, in accordance with its COVID-19 Action Plan ("Action Plan"), to minimize the risk of COVID-19 transmission into and

---

[3] BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf.

7

Case 1:16-cr-00051-MR-WCM   Document 203   Filed 01/12/21   Page 7 of 16

inside its facilities. Since that time, as events require, BOP has repeatedly revised the Action Plan to address the crisis.[4]

The BOP's operations are presently governed by Phase Seven of the Action Plan. The current modified operations plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters in order to stop any spread of the disease. Only limited group gathering is allowed, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training. All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are

---

[4] See generally Federal Bureau of Prisons, COVID-19 Action Plan (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp.

placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. In addition, in areas with sustained community transmission, all facility staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone. A staff member with a stuffy or runny nose can be placed on leave by a medical officer.

Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access will be screened for symptoms and risk factors. Social and legal visits were stopped as of March 13, and remain suspended at this time, to limit the number of people entering the facility and interacting with inmates. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended. Legal visits will be permitted on a case-by-

case basis after the attorney has been screened for infection in accordance with the screening protocols for prison staff. Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

In addition, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the Director of BOP, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, see 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Congress has also acted to enhance BOP's flexibility to respond to the pandemic. Under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020, BOP may "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency

10

conditions will materially affect the functioning of BOP. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note). On April 3, 2020, the Attorney General gave the Director of BOP the authority to exercise this discretion, beginning at the facilities that thus far have seen the greatest incidence of coronavirus transmission. Since March 26, 2020, BOP has transferred 20,053 inmates to home confinement.[5]

Taken together, all these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders. Given the BOP's efforts, the fact that the Defendant faces a potential risk of contracting the virus while incarcerated, without more, is not sufficient to justify the relief he requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

---

[5] See https://www.bop.gov/coronavirus/ (last visited Jan. 8, 2021).

11

Case 1:16-cr-00051-MR-WCM   Document 203   Filed 01/12/21   Page 11 of 16

For all these reasons, the Court concludes that the Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(A)(1)(i).

Even if the Defendant could establish an extraordinary and compelling reason for his release, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the Defendant's offense of conviction was very serious, as it involved the distribution of large quantities of methamphetamine, a dangerous drug which inflicts a great deal of harm to the communities within this District. Further, the Defendant has a significant criminal history, going back 18 years, for which he was assessed a total of 23 criminal history points, well above the amount of points necessary to qualify him for the highest criminal history category.

The Defendant's offense conduct and extensive criminal history demonstrate that he has posed an ongoing threat to public safety over an extended period of time and that his release would pose a danger to the safety of any other person or to the community. For all these reasons, the

Court concludes that the need for the sentence to reflect the true extent and seriousness of the Defendant's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from the Defendant's further crimes militate against a sentence reduction in this case.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's motion for compassionate release is denied.

### B. Motion for Appointment of Counsel

The Defendant moves for the appointment of counsel to represent him in these proceedings. [Doc. 195]. The Defendant has no constitutional right to the appointment of counsel to file post-conviction motions. Lawrence v. Florida, 549 U.S. 327, 336-37 (2007) (citing Coleman v. Thompson, 501 U.S. 722, 756-57 (1991)); Rouse v. Lee, 339 F.3d 238, 250 (4th Cir. 2003), cert. denied, 541 U.S. 905 (2004) (citing Pennsylvania v. Finley, 481 U.S. 551, 555-56 (1987) (no constitutional right to counsel beyond first appeal of right)). The Court may, in some circumstances, appoint counsel to represent a prisoner when the interests of justice so require and the prisoner is financially

13

unable to obtain representation.  See 18 U.S.C. § 3006A(a)(2)(B).  In the instant case, however, the Defendant has failed to demonstrate that the interests of justice warrant the appointment of counsel.  See United States v. Riley, 21 F. App'x 139, 141-42 (4th Cir. 2001).

### C. Motion to Seal

The Government moves the Court for leave to file under permanent seal the BOP records [Doc. 201] filed in support of its Response to the Defendant's motion for compassionate release.  [Doc. 202].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). In the present case, the public has been provided with adequate notice and an opportunity to object to the Government's motion.  The Government filed its motion on December 21, 2020, and such motion has been accessible to the public through the Court's electronic case filing system since that time.  Further, the Government has demonstrated that the subject records contain sensitive

information concerning the Defendant and that the public's right of access to such information is substantially outweighed by the Defendant's competing interest in protecting the details of such information. See <u>United States v. Harris</u>, 890 F.3d 480, 492 (4th Cir. 2018). Finally, having considered less drastic alternatives to sealing the documents, the Court concludes that sealing of these records is necessary to protect the Defendant's privacy interests.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for a Reduction in Sentence Pursuant to the First Step Act and the Changes to the Compassionate Release Statute and 18 U.S.C. 3582(c)(1)(A)(i)" [Doc. 194] is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's letter, which the Court construes as a motion for the appointment of counsel [Doc. 195], is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion to Seal Exhibit to Response [Doc. 202] is **GRANTED**, and the medical records submitted in support of the Government's Response [Doc. 201] shall be filed under seal and shall remain under seal until further Order of the Court.

**IT IS SO ORDERED.**

Signed: January 12, 2021

Martin Reidinger
Chief United States District Judge